IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARMA WELTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-11-219-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Sharma Welter requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]"  *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step one requires the claimant to establish that she is not engaged in substantial gainful activity.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born March 13, 1969, and was forty years old at the time of the administrative hearing. (Tr. 23). She completed high school and a year of college, and has worked as a certified nurse's aid, certified medications aide, and cashier II. (Tr. 44, 168). She alleges that she has been disabled since July 1, 2006, due to a shattered vertebrae in her back, pinched nerve, and herniated discs. (Tr. 163).

### Procedural History

On July 21, 2008, the claimant filed for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Trace Baldwin held an administrative hearing and determined the claimant was not disabled in a written opinion dated May 12, 2010. (Tr. 11-19). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform less than the full range of sedentary work as defined in 20 C.F.R. §§ 404.1521 and 416.921, *i. e.*, she could lift/carry ten pounds frequently/occasionally, stand/walk two hours in an eight-hour workday, and sit six hours

in an eight-hour workday, but that she also needed a sit/stand at will option, could only walk fifty yards, and could not be around moving or dangerous machinery or equipment, unprotected heights, or uneven flooring. (Tr. 15). The ALJ concluded that, although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, cashier/order clerk/food or assembler. (Tr. 19).

## Review

The claimant contends that the ALJ erred: (i) by failing to consider *all* of the medical evidence, particularly the evidence related to her obesity, (ii) by improperly finding that she has the RFC to perform substantial gainful activity, and (iii) by failing to properly evaluate her credibility. The Court finds the claimant's third contention persuasive for the following reasons.

The relevant medical evidence reveals that the claimant injured her back while she was at work, when she fell out of a chair and twisted her back. (Tr. 206). The claimant did not improve with aggressive conservative treatment, and underwent a L4-5 posterior spinal fusion using iliac crest bone graft in September 2007. (Tr. 207, 219). Following her surgery, the claimant continued to report pain and to request medications for her pain. (Tr. 237). Although the report is not in the record, other records show the claimant went to the emergency room with complaints of back pain eleven days prior to her on-the-job injury. (Tr. 212). One of the claimant's physicians opined that the July 1, 2006 injury was likely an aggravation of the injury that occurred shortly beforehand. (Tr. 212).

The claimant's treating physician, Dr. Beth Leader, completed a history and physical statement of the claimant, finding that the claimant had been temporarily totally disabled as the result of her injury, that she had sustained a permanent anatomical abnormality, and that she would endure additional permanent anatomical abnormality as the result of the surgical intervention. (Tr. 230). A state consultative examiner, Dr. Gordon B. Strom, found that the claimant still suffered from back pain despite an apparently successful surgery, and that she demonstrated an inability to stand for any length of time due to the pain. (Tr. 262). Dr. Strom further stated that the claimant's obesity contributed to her limited range of motion and inability to work. (Tr. 263).

At the administrative hearing, the ALJ asked the claimant about her work following the alleged onset, and she indicated that she had worked part-time (four hours a day, five days a week), until August 2007 which did not qualify as substantial gainful activity. (Tr. 24-25). The claimant testified that she was receiving Workmen's Compensation benefits, that she still has pain in her back daily, that she could not recall being pain-free any time since her surgery in 2007, that she lays down for two to three hours a day, and that the pain also goes down into her right leg. (Tr. 26-27, 30-32). Additionally, she stated that she also experiences numbness in her right leg, which causes her to fall approximately once every two weeks, and that she gets muscle spasms almost daily. (Tr. 32-34). She estimated that she could sit or stand an average of thirty minutes, that standing any longer would cause muscle spasms in her lower back, and that she could walk approximately fifty yards. (Tr. 35-36). The record also contained a "Work Activity Questionnaire," completed by Jessica Allen, from the nursing home where the

claimant had worked part-time after her injury. Ms. Allen indicated that the claimant regularly appeared for work and completed duties assigned to her, but that the claimant had easier duties, fewer hours, more breaks, extra help, and frequent absences. She thus rated the claimant's productivity as 50% or less of other employees. (Tr. 160-161).

The ALJ noted the claimant's allegation that she was unable to work due to her back pain, but made no mention of her hearing testimony, then stated, "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 15). The ALJ then summarized the medical evidence, including Ms. Allen's report, but gave that report little weight because it was not completed by the claimant's direct supervisor and the production level reported was "not supported by the overall medical evidence of record." (Tr. 17). He further concluded that the claimant's statements as to her daily activities were not entirely credible and that she was not a credible witness because (i) the medical evidence did not support her claims, and (ii) she stated that her injury occurred on the job, but another doctor opined that it resulted from the injury that occurred days earlier at home. (Tr. 17).

Deference is generally given to an ALJ's credibility determination, unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v.*

*Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).  But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].  A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'"  *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).  The ALJ's credibility determination fell below these standards.

First, the ALJ mentioned but did not discuss the credibility factors set forth in Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529, 416.929, and further failed to apply them to the evidence.[2]  He was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but "simply 'recit[ing] the factors'" is insufficient, *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4, and the ALJ did not even do that.

Second, the comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" showed an improper approach to credibility.  The ALJ should have *first* evaluated the claimant's credibility according to the above guidelines and only *then* formulated an appropriate RFC, not the

---

[2] The factors to consider in assessing a claimant's credibility are:  (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations.  Soc. Sec. Rul. 96-7p at *3, 1996 WL 374186 (July 2, 1996).

other way around; instead, the ALJ apparently judged the claimant's credibility according to an already-determined RFC.  *See Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility.  That gets things backwards.  The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches.  Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be.").

   Last, the specific reasons given by the ALJ for finding that the claimant's subjective complaints were not credible are not entirely supported by the record.  For example, the ALJ stated in his written opinion that the claimant had "testified at the hearing that she suffered an on-the-job injury which had caused the need for surgical intervention," but found that statement not credible because her doctor had found an at-home injury to be the original cause of her injury.  (Tr. 17).  The ALJ thus ignored the doctor's own report that the claimant's at-work injury had aggravated her earlier injury.  Further examination of such a "perceived" inconsistency indicates that the ALJ only cited evidence favorable to his foregone conclusions and ignored evidence that did not support his conclusions.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

Because the ALJ failed to analyze the claimant's credibility in accordance with *Kepler* and *Hardman*, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.  On remand, the ALJ should properly analyze the claimant's credibility, and if such analysis requires any adjustment to the claimant's RFC on remand, the ALJ should re-determine what work she can perform, if any, and whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 18th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma